

**SIGNED this 01 day of September, 2005.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

```
            UNITED STATES BANKRUPTCY COURT
              WESTERN DISTRICT OF TEXAS
                    AUSTIN DIVISION


IN RE:                          §
                                §
DANNY LEE FERCH                 §      CASE NO. 04-12167-FM
                                §      CHAPTER 11
        Debtor(s)               §
```

**MEMORANDUM OPINION**

The Court held a hearing on confirmation of the Debtor's proposed plan of reorganization on July 27, 2005. The Court took the matter under advisement. This Memorandum Opinion shall constitute Findings of Fact and Conclusions of Law under Bankruptcy Rules 9014 and 7052. This is core proceeding under 28 U.S.C. §157(b)(2) since it both arises in a case under Title 11 and pursuant to the provisions of Title 11. The Court, therefore, has the jurisdiction to enter a final order under 28 U.S.C. §1334(a) and (b), 28 U.S.C. §157(a) and (b), 28 U.S.C. §151 and the Standing Order of Reference from the United States District Court for the Western District of Texas of all bankruptcy matters.

1

**Statement of Facts**

On February 19, 2004, a jury verdict was rendered in Cause No. GN399533 in the 201st Judicial District Court of Travis County, Texas against the Debtor Danny Lee Ferch and in favor of creditor William Baschnagel in the scheduled amount of approximately $375,000.00. This case was instituted on April 19, 2004 as a Chapter 13 case primarily because of the Debtor's inability to secure a supersedeas bond with regard to the judgment that was anticipated to be entered based on the jury verdict. The case was converted to Chapter 11 pursuant to the Motion of William Baschnagel as the Debtor was ineligible for relief under Chapter 13 since the amount of his liquidated unsecured debt exceeded the statutory limits for Chapter 13. The conversion occurred July 28, 2004. The state court judgment has now been entered and is on appeal. Together with interest, such judgment now exceeds $400,000.00. The basis of the judgment according to the Debtor's Disclosure Statement is that the jury found that the Debtor and William Baschnagel were in a partnership and that the Debtor breached various of his duties to his partner, William Baschnagel, resulting in the damages which were assessed by the jury. The details of the claim and its basis are not part of the record although Baschnagel claims that it is a fraud judgment.

The Debtor's Disclosure Statement reflects that the Debtor's actual average gross monthly revenue post-petition has been approximately $42,000.00. The Debtor's actual monthly operating expenses have averaged $20,150.00. This leaves net monthly income

of $21,850.00. In addition, Debtor's spouse has an income of $1,400.00 per month.

The Debtor's monthly living expenses are approximately $9,000.00 and his self-employment taxes are $4,000.00. That leaves approximately $8,850.00 available for payment of unsecured claims under the plan without regard to the Debtor's spouse's income of $1,400.00 per month.

Debtor's current proposal as contained in the Second Amended Disclosure Statement is to pay the general unsecured claim class $6,000.00 a month for seventy-six (76) months. Community creditor claims are to be paid $1,000.00 a month on an estimated total amount of $17,000.00.

The Debtor's income from the insurance business fluctuates on a monthly basis. It is this insurance business, fully owned by the Debtor, that William Baschnagel claims was the subject of his partnership with Debtor and of which partnership interest he claims the Debtor unlawfully defrauded him.

As of the end of June 2005, the Debtor had accumulated $77,000.00 in cash which he proposes to use as follows: $25,000.00 to his bankruptcy counsel, $5,000.00 to Debtor's accountant, and the remainder to fund his state court attorney's fees for appeal of Baschnagel's judgment and business capital. Additionally, in the year 2005, Debtor has apparently contributed $33,120.00 of his post-petition income to his IRA pension fund.

The plan was initially proposed to pay creditors claims without interest. When the Court pointed out that such proposal

did not meet the requirements of 11 U.S.C. §1129(b)(2)(B)(i) by which he can cramdown the unsecured creditor class which Mr. Baschnagel controls [and which voted against plan confirmation], the Debtor amended his plan to propose interest on the unsecured class. For Baschnagel this would be the judgment rate of 5% per annum.

## Objections

William Baschnagel objects to the Debtor's plan alleging it does not meet the good faith requirements of 11 U.S.C. §1129(a)(3) and that it violates the cramdown provisions of 11 U.S.C. §1129(b)(1) and (b)(2)(B) because the Debtor has accumulated funds from the operation of his business post-petition which are not dedicated to payment of creditor claims and the Debtor post-petition has contributed $33,120.00 to his IRA pension fund thereby converting non-exempt property to exempt property post-petition and thus discriminating unfairly against the impaired claims of the general unsecured creditors which are entitled to absolute priority over the Debtor in the distributions to be made under the plan.

## Issues

Simply stated, the issues are whether the Debtor's plan has been proposed in good faith and whether it is fair and equitable to Baschnagel and his creditor class.

## Conclusions of Law

## Good Faith

The Fifth Circuit Court of Appeals has stated the following

4

with regard to the good faith requirement contained in 11 U.S.C. §1129(a)(3).

> The requirement of good faith must be viewed in light of totality of circumstances surrounding establishment of a Chapter 11 plan keeping in mind the purpose of the Bankruptcy Code to give debtors a reasonable opportunity to make a fresh start. *Public Finance Corp. v. Freeman*, 712 F.2d 219, 221 (5th Cir. 1983). When the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirement of Section 1129(a)(3) is satisfied. See *In re Hewitt,* 16 B.R. 973, 981 (Bankr. D. Alaska 1982)(whether petition for reorganization was filed in good faith).

*In re Sun Country Development, Inc.,* 764 F.2d 406 (5th Cir. 1985).

The Debtor's plan provided for full payment of only the principal amount of creditors' claims. However, upon the ruling by the Court that interest would be required on the unsecured claims under 11 U.S.C. §1129(b)(2)(B)(i), an amendment was made on the record to that effect. Accordingly, the Debtor now proposes to pay all creditors' claims with interest. Baschnagel's claim will be paid in full at the judgment rate of 5%. The Debtor will stay in business. All of the evidence reflects that the Debtor will be able to make these payments. Good faith under 11 U.S.C. §1129(a)(3) is not a state of mind. This record establishes that the Debtor's plan was proposed with the legitimate and honest purpose to reorganize and that it has a reasonable hope of success. The good faith requirement of 11 U.S.C. §1129(a)(3) is, therefore, satisfied. The issue as to the amount of time it will take to pay Baschnagel's claim and the structure of those payments, including the use of excess income from the operation of the Debtor's business by the Debtor for purposes other than payment of

creditors' claims is more appropriately the subject of the "fair and equitable" test that the Debtor must meet under 11 U.S.C. §1129(d)(1).

## **Fair and Equitable**

A plan of reorganization may be confirmed over the dissenting class of unsecured creditors [here the class controlled by Baschnagel's negative vote] if the plan does not "discriminate unfairly, and is fair and equitable, with respect to each class of claims or interest that is impaired under, and has not accepted, the plan." 11 U.S.C. §1129(b)(1).

Further, with respect to a class of unsecured claims, and in particular with respect to the class of claims which Mr. Baschnagel controls in this case, this plan cannot be confirmed unless, "the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan equal to the allowed amount of such claim; ...". 11 U.S.C. §1129(b)(2)(B)(I).

The Fifth Circuit Court of Appeals has determined the following with regard to the "fair and equitable" requirement.

> Section 1129(b)(2) sets minimal standards plans must meet. However, it is not to be interpreted as requiring that every plan not prohibited be approved. A court must consider the entire plan in the context of the rights of the creditors under state law and the particular facts and circumstances when determining whether a plan is "**fair** and **equitable**" See *In re Spanish Lake Associates,* 92 B.R. 875, 878 (Bankr. E.D. Mo. 1988); *In re Edgewater Motel, Inc.,* 85 B.R. 989, 998 (Bankr. E.D. Tenn. 1988).

*In re D & F Construction, Inc.,* 865 F.2d 673, 675 (5th Cir. 1989).

Baschnagel first argues that the plan is not fair and

equitable as the post-petition net income of Debtor [current cash on hand] is not being paid on creditor claims and that it should be dedicated to payment of creditors' claims before being used by the Debtor for his own personal benefit. Baschnagel cites *In re Herberman,* 122 B.R. 273 (Bankr. W.D. Tx. 1990). In that decision, Bankruptcy Judge Leif Clark determined that 11 U.S.C. §541(a)(6) did not exactly mean what it says. On its face, 11 U.S.C. §541(a)(6) excludes from property of the estate all "earnings from services performed by an individual debtor after commencement of the case". 11 U.S.C. §541(a)(6). Judge Clark determined that such section should not be literally applied in the situation where the individual debtor is running a sole proprietorship business. He ruled that it was necessary to determine what an appropriate salary for the debtor's personal services to the estate would be with the overage being profits of the "business" which should go to creditors. This was the exact opposite of the other important decision in this area at that time, which was *In re Cooley,* 87 B.R. 432 (Bankr. S.D. Tex. 1988). In that case all of Doctor Cooley's post-petition income was excluded from the estate because of 11 U.S.C. §541(a)(6) even though he employed four associate surgeons who accounted for a substantial amount of his post-petition revenues.

Both the *Herberman* and the *Cooley* cases were determined during the pendency of the Chapter 11 cases and prior to confirmation and the determinations were made upon the basis of evidence placed into the record as to what an appropriate salary would be.

Specifically, the parties introduced evidence into the record on the issue of what amount of income produced out of the individual sole proprietor debtor's business should be considered profits and not salary.

It should be pointed out that in this case no one has brought forth any motion seeking such a determination. The issue has been "teed up" through an objection to the confirmation of the Debtor's plan. That aside, there is no evidence in the record as to what amount would be salary and what amount would be profits. Since the issue was brought forward by the objecting creditor, it is the objecting creditor's burden to prove that such a division between "salary" and "profits" is appropriate. That is because 11 U.S.C. §541(a)(6) makes it clear that post-petition earnings for personal services are not property of the estate. The party arguing that some portion of those post-petition earnings should be deemed "profits" should have the burden of proof. Here, there was no evidence put into the record as to what that division should be, if any. So, even assuming the *Herberman* case is the appropriate analysis, Baschnagel's objection to confirmation on that basis must be overruled since he failed to produce any evidence from which such a ruling could be made. Additionally, this Court feels that the *Cooley* case is the right interpretation of 11 U.S.C. §541(a)(6) and not the *Herberman* case.

Therefore, the use by the Debtor of his post-petition earnings to pay $33,000.00 to his IRA pension plan does not make his plan run afoul of the "fair and equitable" requirement of 11 U.S.C.

8

§1129(b)(1). Nor does it make the Debtor's plan unfair and inequitable simply because the Debtor is using accumulated funds from his earnings post-petition to pay his bankruptcy counsel, his certified public accountant, and his state court counsel and retaining the rest as business capital.

That being said, it is a completely different issue with regard to post-confirmation earnings. While there may be a statutory exemption for the earnings of the individual debtor between the time of the petition date and the confirmation date (or the effective date of the plan), there is no such statutory exemption with regard to post-confirmation earnings from which the debtor proposes to pay his creditors. The proposal must then be determined in light of the "totality of the circumstances" and based thereon, the "fairness and equitableness" of the proposal being made.

If it were not for the Baschnagel claim, Mr. Ferch would not be in bankruptcy. The Baschnagel claim arose from a state court determination that Debtor had effectively defrauded Baschnagel by taking the assets of a partnership of those two individuals and placing them into a business owned solely by Ferch. Therefore, the Debtor's plan proposes to pay Baschnagel with the money generated by the insurance business that the state court found was originally a partnership between Baschnagel and Ferch and which Ferch unlawfully appropriated one-half thereof from Baschnagel. It seems to the Court that the fair and equitable requirement should be stringently applied under these circumstances.

As proposed, the Debtor's plan will take almost eight years to pay Baschnagel's claim at the rate of $6,000.00 per month.

The Debtor's own Disclosure Statement reflects that he has excess average monthly net income [after payment of his own personal living expenses of $9,000.00 and his self-employment taxes of $4,000.00] of $8,850.00, without regard to his wife's income of $1,400.00 per month. He also currently has on hand from net income accumulated post-petition cash reserves of approximately $40,000.00. Even though these funds do not have to be dedicated to payment of creditors' claims they are an ample reserve for possible future fluctuations in income and, as such, indicate that it is unnecessary for the Debtor to continue to create new and additional reserves out of future income.

Further, it is evident that the insurance business is, in fact, prospering. Gross revenues reported from July 27, 2004 to June 30, 2005 are $453,515.93, contrasting with revenues set forth in the Statement of Affairs for the year 2003 of $344,440.00 and for the year 2002 of $266,871.00.

Additionally, it is anticipated that the Debtor will continue to want to put sizable sums of money in his own personal IRA pension plan post-confirmation, as opposed to paying creditors. While such may have been technically permissible post-petition due to the exclusionary language of 11 U.S.C. §541(a)(6), it should not be permitted post-confirmation at the sole discretion of the Debtor.

The plan proposes to pay Baschnagel's claim $6,000.00 a month

until paid. This will take almost eight years at that rate.

The other "community class of unsecured claims" gets $1,000.00 a month for seventeen months until it is paid in full. That $1,000.00 a month under the plan as proposed is just additional income to the Debtor once it is paid off. That is not fair and equitable.

Additionally, even beginning the first month after confirmation, the Debtor will have $1,850.00 per month excess income over payment of creditors' claims. In view of the large amount of cash currently on hand to cover the fluctuations of business operations, that does not seem fair and equitable either. And, after seventeen months, that number will increase to $2,850.00 per month. That is clearly not fair and equitable.

The Debtor should be required to dedicate more income for a faster payment of claims.

The Court will not confirm the plan as proposed. However, if the Debtor changes his proposed plan within twenty (20) days of the issuance of this Memorandum Opinion so it provides the following, the Court will confirm the plan:

1. $7,000.00 per month to the payment of the Baschnagel class of claims for the first seventeen months following the effective date of the plan; and

2. $8,000.00 per month beginning the eighteenth month following the effective date of the plan until the Baschnagel class of claims is paid in full with interest; and

3. To the extent the Debtor places any money in his personal

11

IRA pension plan or any type of tax deferred savings while Baschnagel is still owed any money at all, then, contemporaneous therewith, he must pay the same amount to the claims in the Baschnagel class of claims; and

    4. Quarterly accountings in the form of the current Monthly Operating Reports plus copies of his annual 1040's must be provided by the Debtor to Baschnagel so long as any debt is outstanding on his claim.

    Should no amendment be forthcoming within twenty (20) days of the issuance of this Memorandum Opinion incorporating the requirements set forth above, confirmation will be denied and an order will be entered denying confirmation of Debtor's plan. Further, the Motion of the United States Trustee to Convert this case to a case under Chapter 7 will be granted.

                             ###

Copy To:

Michael Baumer
Law Office of Michael Baumer
1717 West 6th St., Suite 290
Austin, TX 78703
FAX 512/476-8604
Counsel for Debtor

Michael Deitch
Law Offices of Michael Deitch & Associates
800 Rio Grande
Austin, TX 78701
FAX 512/474-1579
Counsel for William Baschnagel

12